[No. 1272, August 1, 1910.]

MELVILLE R. SUMMERS, Administrator, Appellee, v. BOARD OF COUNTY COMMISSIONERS, Sandoval County, Appellant.

### SYLLABUS (BY THE COURT.)

1. A probate clerk who, upon the formation of a new county, makes transcripts of the property records of the old county for the use of such new county pursuant to Chapter 70 of the Laws of 1899, and in so doing uses printed forms of conveyances which he must compare and in many instances correct and interline, is entitled to the folio rate upon the printed folios as well as upon those written.

2. The administrator of the estate of such probate clerk cannot recover on behalf of such estate for work done by such administrator in connection with such transcripts and after the death of the probate clerk.

3. Such probate clerk having died in 1906 with the work only partially completed, the compensation which goes to his estate is fixed by Chapter 70 of the Laws of 1899 in connection with C. L., Sec. 1768, and not by the subsequently enacted Chapter 28 of the Laws of 1907, which latter as a part of the work compensated for imposes additional duties never performed by such probate clerk.

4. The present record affords no basis of fact upon which to entertain the suggestion that the probate clerk failed to certify each book prepared by him according to Sec. 2, of Chapter 70, of the Laws of 1899, nor for the contention that the claim as allowed will lead to a violation of the Springer Act, in so far as the latter controls the relation between the indebtedness of Sandoval County and the taxable property of such county.

Appeal from the District Court for Sandoval County before IRA A. ABBOTT, Associate Justice. Reversed.

GEORGE S. KLOCK, District Attorney, for Appellant.

Summers, Adr., v. Commissioners.

When Sandoval County was created, a probate clerk was allowed but ten cents a folio for the transcription of records appropriate for the territory included within the new county. Laws 1899, ch. 70, p. 145; C. L. 1897, sec. 1768.

Chapter 70 of the Laws of 1899 imposes a duty upon a public officer, to-wit, the probate clerk. It does not provide for compensation to any person rendering service as an individual.

No valid claim can be made for comparing the copies with the original records and making indexes. Laws 1907, ch. 28; Laws 1899, ch. 70; Laws 1903, ch. 27; Laws 1905, ch. 10; Mechem on Public Offices, sec. 856, p. 577.

The records were not properly certified and therefore no claim can be made for compensation. Laws 1899, ch. 70, sec. 2.

Chapter 28 of the Laws of 1907, so far as the same attempt to bestow compensation for past services rendered by a public officer is void. Dillon on Municipal Corporations, vol. 1, 4 ed., sec. 233, p. 315; Laws 1899, sec. 70; 1 Hawkins, P. C., ch. 68, sec. 4.

If any error of omission or commission was made by the county commissioners of Sandoval County in either receiving and accepting the records in this case or in any subsequent action by such commissioners this court has power to send the case back to such commissioners for the correction of any errors in the claim as presented. Riding v. Johnson, 128 U. S. 212; Esthe v. Lear, 7 Peters, U. S. 130; U. S. v. Galbraith, 22 How., U. S. 89-96; Illinois Central R. R. v. Illinois, 146 U. S. 387.

The county should not be required to pay for the printed folios.

The indebtedness sought to be imposed upon Sandoval County by Chapter 28, Laws 1907, is in violation of Sec. 4, Act of Congress, July 30, 1886.

The legislature has no power to pass retroactive laws providing for the payment of fees and salary of county officers when the same has been fixed by law, or to impair obligations already incurred. Ogden v. Saunders, 12 Wheaton, U. S. 213, 257; Louisiana ex rel Nelson v.

Police Jury of St. Martin's Parish, 111 U. S. 716; Laws 1907, ch. 28; Thomas Mfg. Co. v. Lathrop, 7 Conn. 550; Jones v. Roland, 57 Md. 462; Louis Sutherland Statutory Construction, par. 641; Act of Congress, Sep. 9, 1850, sec. 17; Calhoun v. McLenan, 42 Ga. 405; Rusir v. William Tell Saving Fund Association, 39 Pa. St. 137; Greenough v. Greenough, 11 Pa. St. 489.

F. W. CLANCY and E. W. DOBSON for Appellee.

Laws of 1907, ch. 28, is valid. 110 U. S. 643; 11 Cyc. 496; Dillon on Mun. Corp., ch. 4, sec. 32; Cleveland v. Board, 38 N. J. L. 264, 265; Cooley on Const. Lim., 3d ed. 379; Dillon on Mun. Corp., sec. 44; Rader v. Township of Union, 39 N. J. L. 519, 520; Blanding v. Burr, 13 Cal. 351; Denie, J., 3 Kern 149; Creighton v. San Francisco, 42 Cal. 450, 451; Gaslight Co. v. Clark, 95 U. S. 652, 653; McMillen v. The County Judge, 6 Iowa 361; Thompson v. Lee County, 3 Wall. 331; New Orleans v. Water Co., 142 U. S. 88, 89; Guilford v. Supervisors, 13 N. Y. 149; Mount v. State, 46 Am. Rep. 192; Board v. McLandsborough, 36 Ohio St. 232; State v. Board, 38 Ohio St. 6; Satterlee v. Matthewson, 2 Pet. 412, 413; Brewster v. Syracuse, 19 N. Y. 117, 118; Thomas v. Leland, 24 Wend. 68; Blanding v. Burr, 13 Cal. 351; Bridge Co. v. Attica, 119 N. Y. 211; Duanesburg v. Jenkins, 57 N. Y. 189; Gas Light Co. v. Middletown, 59 N. Y. 231; Steele County v. Erskine, 98 Fed. 216.

### STATEMENTS OF FACTS.

The present County of Sandoval was created by legislation in 1903 and 1905. From the year first named and continuously up to his death on Feb. 13, 1906, James A. Summers was probate clerk and ex-officio recorder of Bernalillo County. Upon the formation of the new county (taken largely from Bernalillo County) Mr. Summers proceeded under Chapter 70 of the Laws of 1899 to make transcript of all of his county records affecting property in the new county. This work had been completed at the time of his death only to the extent of copying and certify-

ing to fifteen record books, but was carried forward by his administrator who on June 3, 1907, turned over to the Board of County Commissioners the records completed by his intestate and six additional books containing indexes made by the administrator, all of which the board accepted, reserving, however, the question of the number of folios for which it should pay and the rate of compensation. The claim as finally made by the administrator to the board was for $12,068.99. The board, rejecting all printed folios and allowing compensation at the rate of ten cents per folio, finally approved the account for $7,916.66. The administrator appealed and the cause coming on *de novo* in the District Court under C. L., Sec. 672, that court, allowing for the work done by both Summers and his administrator and at the rate of fifteen cents per folio including printed folios, found the amount due to be $12,068.99, for which judgment was rendered. The case is here on appeal by the defendant board. The remaining facts sufficiently appear in the opinion.

### OPINION OF THE COURT.

POPE, C. J.—(After stating the facts as above) The points made as to the claim pro and con may be classified as four. It is contended, first, that while the form of certificate made was sufficient, the fifteen books as certified to and delivered were not properly certified, in that no certificate was attached to each book as required by Section 2 of Chapter 70 of the Laws of 1899, and that decedent's estate is therefore entitled to no compensation whatever for the work done. We find nothing, however, in the record to sustain the claim that each book was not certified. Neither the findings of the trial court nor the stipulations supplementing such findings so state, nor does any inference properly deducible therefrom lead us so to conclude. On the contrary the presumption in favor of a compliance by a public official with a public duty, recognized as it is by the allowance of this claim at least in part by the county commissioners and its approval in its entirety by the District Court, leads us in

the absence of any proof to the contrary to sustain the trial court upon this point and to reject as untenable a contention thus for the first time and without proper basis urged in this court.

It is in the second place contended that there was error in allowing for folios embodied in the printed forms of the instruments in the books delivered and that only the written portion of such copies should be compensated for. We regard this, however, as entirely too narrow a basis of payment. While it was true that the books as delivered were largely printed forms filled in with the data appropriate to each instrument, in order to deliver such, it became necessary for the copyist to compare the two forms, to note erasures and interlineations and finally by his certificate to show that the form as certified to was a true and complete copy of the original. It is a matter of common knowledge that in this Territory the forms of conveyance differ considerably, the divergence being from a word or two in some instances to additions of sentences. The use of printed forms tends to the public convenience and for the work of comparison, correction and addition necessary to make the copies speak the truth, the probate clerk was in our judgment entitled to the same folio allowance as if he had extended the instrument in long hand instead of correcting and adopting a printed form.

Having thus indicated two respects in which the claim was properly treated by the trial court, we come now to two directions in which we deem it to have been erroneously considered. We are of the opinion first, that no compensation should have been allowed for work done by decedent's administrator. Mr. Summers died on Feb. 13, 1906, three days after he had certified to fifteen of the books subsequently delivered to the county commissioners. After that his administrator made six books of indexes which, with those just mentioned made as we have seen the total of twenty-one, delivered by the administrator on June 3, 1907. The trial court allowed not only for the fifteen books, copied and certified to and thus completed by the deceased, but also for indexes made after his death by his son and administrator. We

cannot approve this conclusion.  The direction given by Chapter 70 of the Laws of 1899, is that upon the creation of new counties "it shall be the duty of the probate clerk" of the old county to transcribe the records pertaining to real or personal property transferred to the new county and that such officer shall be paid therefor at the rate allowed by law for making copies of such records.  It is manifest that this is a duty imposed by law upon a public officer and the rate of compensation goes to him as such.  Upon his death the duty, with the emoluments, ceases, and it is not within the power of his administrator to carry forward the work as his and demand the fees.  All such a personal representative may do is to proceed to the collection of the amount due for his intestate's work up to the date of the latter's death.  The allowance for anything occurring subsequent to Mr. Summers' death was therefore improper.

We are further of the view that the trial court erred in allowing fifteen cents per folio.  As just indicated the work up to Mr. Summers' death was done under the statute of 1899, which provides as payment for transcribing the rate then allowed by law for making copies of such records.  This under Comp. Laws, Sec. 1768, was ten cents per folio of a hundred words.  By the Act of March 16, 1907 (C. 28), probate clerks were allowed fifteen cents per hundred words for "copying, comparing, indexing and certifying" such transcripts.  The latter act provided a higher rate of compensation but imposed the additional and important duty, not found in the Act of 1899, of indexing the records thus copied.  This latter was a duty of no little laboriousness, evidenced here by the fact that six index books were found by the administrator necessary for fifteen copied volumes.  The increased rate must therefore be deemed referable to the fact that under the new law the clerk was not only to copy the records but after having done so to make the minute re-examinations of them necessary to accurate indexes.  The work imposed was an entire one and the rate was based upon it as such.  Since the officer died a year before the Act of 1907 was passed, and since he performed none of the new duties it imposed, his estate

cannot be deemed entitled in any event to the increased compensation provided by it, and any payment allowed must be upon the basis afforded by the law in force when his work was performed, compensating that class of work. Under the view which we take of the matter we find it unnecessary to determine the question argued at the bar as to the power of the legislature to increase, after one has rendered service to a county, the compensation for such service. It is sufficient for us to observe that the service here properly chargeable against Sandoval County was not performed according to the terms of the Act of 1907 and cannot be paid for according to that Act.

There is also a suggestion made that the indebtedness sought hereby to be imposed upon Sandoval County will be violative of Sec. 4 of the Act of Congress of July 30, 1886, known as the Springer Act, upon the idea that it will cause the county indebtedness to exceed four per centum of the value of the taxable property of such county. We need only say, however, that this question was not raised below, nor was that court nor are we possessed of knowledge from the record or otherwise as to the existing indebtedness or the taxable property of Sandoval County so as to be able to pass upon the question.

The judgment of the trial court is reversed and the cause remanded with directions to ascertain the number of folios (both printed and written matter) in the fifteen books completed and certified to previous to Summers' death, and, having ascertained these to enter judgment in favor of appellee therefore at the rate of ten cents per folio, (the costs of this court to be equally divided.)